UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 14-146-WOB-CJS

DAVID NEAL STAMPER                                                                    PLAINTIFF

v.                        **REPORT AND RECOMMENDATION**

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY                                    DEFENDANT

\* \* \* \* \* \* \* \* \*

Plaintiff David Neal Stamper brings this action under 42 U.S.C. § 405(g), challenging Defendant Commissioner's final decision denying his application for supplemental security income (SSI) benefits under the Social Security Act.[1]  At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits.  For the reasons explained herein, it will be recommended that the Plaintiff's Motion for Summary Judgment (R. 14) be **denied,** and the Commissioner's Motion for Summary Judgment (R. 16) be **granted.**

I.      STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is

---

[1] Plaintiff actually filed applications for both disability insurance benefits and SSI benefits, alleging a disability onset date of May 30, 2004, for both applications.  However, in this appeal, Plaintiff has abandoned his claim for disability insurance benefits, indicating in his Memorandum in Support of Award of Benefits that he "now contends that he became permanently disabled for purposes of the Social Security Act from his application date of November 3, 2010 onward" and is "eligible for benefits pursuant to 20 C.F.R. § 416.920" (R. 14-1, at 9), advocating for an outright award of SSI benefits from his filing date of November 3, 2010 (*see* R. 14-1, at 2).

supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that he is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that he is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (*citing* 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate that he suffers from a severe impairment. *Id*. at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work

2

activities.'" *Id*. at 804 (*citing* 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. pt. 404, subpt. P, app. 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id*. (*citing* 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, the claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work. *Id*. Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the national economy. *Id*. (*citing Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id*. (*quoting Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 548 (6th Cir. 2004)).

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Jessie Lee Patrick was 47 years of age at the time of the ALJ's decision, for purposes of his SSI application. (Administrative Record (A.R.) 45). Plaintiff has a high school education (A.R. 45) and has past relevant employment as a sheet metal duct worker, logger, and bulldozer operator. (A.R. 45, 55-56, 65-66). Plaintiff initially alleged disability due to neck and shoulder pain; swelling, pinched nerves, bone spurs, and collapsed vertebrae in his neck; degenerative disc disease; numbness and pain in his arms and fingers and limited neck and head movement; limited range of use of his arms; and inability to sleep. (A.R. 84). In a subsequent Disability Report on Appeal, Plaintiff additionally alleged knee and ankle problems, severe headaches, and anxiety and depression that contribute to rendering him disabled. (A.R. 237).

Although Plaintiff has now abandoned his disability insurance claim, initially he filed applications for both disability insurance benefits and SSI on November 3, 2010, alleging disability beginning on May 30, 2004. (A.R. 157-167). Both applications were initially denied on December 21, 2010 (A.R. 100-03, 104-07), and again on March 14, 2011, upon reconsideration. (A.R. 75-82, 84-94). Plaintiff requested a hearing which was held before Administrative Law Judge (ALJ) Roger L. Reynolds on December 12, 2011, in Lexington, Kentucky, with Plaintiff appearing by video conference from Hazard, Kentucky. (A.R. 41-73). During this hearing, the ALJ heard testimony from Plaintiff and vocational expert Dr. Jackie Rogers, who participated by telephone. (*Id*.). After receiving testimony and reviewing the record, the ALJ issued his written decision on January 18, 2012, finding Plaintiff was not disabled. (A.R. 26-36).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*Id.*). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 30, 2004, his initially alleged onset date. (A.R. 28).[2] At step two, the ALJ found Plaintiff had the following severe impairments: chronic neck pain secondary to degenerative disc disease of the cervical spine with disc bulges at the C5-6 and C6-7 levels, hypertension, depression not otherwise specified, and anxiety not otherwise specified. (A.R. 29). The decision reflects that at step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under the applicable Federal Regulations. (A.R. 29-32).

---

[2] As noted, Plaintiff on appeal to this Court has abandoned his disability insurance benefits claim and is pursuing only his SSI application that he became permanently disabled from his November 3, 2010, SSI application date forward.

At step four, the ALJ considered the evidence and determined that Plaintiff had the residual functional capacity (RFC) to perform less than a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (A.R. 32). Specifically, the ALJ found that Plaintiff has the functional capacity to:

> perform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Light work is defined at 20 CFR 404.1567(b) and 416.967(b) as involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, a person must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
>
> The claimant retains the capacity to perform a range of light and sedentary work activities, with no climbing of ropes, ladders or scaffolds, occasional climbing of stairs or ramps, frequent balancing, occasional stooping, kneeling, crouching or crawling; no overhead work with the upper extremities; no exposure to concentrated vibration, temperature extremes, or industrial hazards. He can do no work requiring frequent turning of the head and should work in an object oriented environment with only occasional and casual contact with coworkers, supervisors or the general public.

(A.R. 32-33). The ALJ heard testimony from VE Rogers, who stated that based upon the RFC provided by the ALJ, Plaintiff could not perform his past relevant work. (A.R. 66). The ALJ then proceeded to step five, and adopted the VE's opinion that given an individual of Plaintiff's age, education, work experience, and RFC as recited above, there are other jobs that exist in significant numbers in the national and state economy that could be performed, including representative occupations such as packer, press operator, and inspection work at the light level and assembly and inspection work at the sedentary level. (A.R. 34-35, 67). The ALJ ultimately determined that

5

Plaintiff is capable of adjusting to other work and therefore is not disabled for Social Security purposes. (A.R. 35).

Plaintiff appealed the ALJ's decision to the Appeals Council. (A.R. 18-19). On August 13, 2013, the Appeals Council denied Plaintiff's request for review (A.R. 7-13), rendering the ALJ's January 18, 2012, decision denying Plaintiff benefits the final decision of the Commissioner. (*Id*.). On April 14, 2014, having duly exhausted his administrative remedies and after obtaining an extension of time from the Appeals Council (A.R. 1-2), Plaintiff timely filed a Complaint with this Court asserting that the ALJ erred as a matter of law in failing to find Plaintiff disabled. (R. 1). Plaintiff and the Commissioner have filed Motions for Summary Judgment (R. 14, 16), which are pending for the Court's consideration.

### III. ANALYSIS

Plaintiff argues on appeal that the ALJ did not properly evaluate the medical evidence, instead giving "controlling weight to his own baseless medical and mental opinion" (*see* R. 14-1, at 10). Plaintiff contends the opinions of his treating physicians were unchallenged, yet the ALJ failed to give them controlling weight or provide good reasons for why they were not given controlling weight. Had these treating opinions been accepted, argues Plaintiff, he would have been found physically and mentally disabled under the Social Security standard.

Plaintiff's assertion that the ALJ "played doctor" (*see* R. 14-1, at 2) and arrived at his own medical opinions is mistaken. Contrary to Plaintiff's contention, ALJ Reynolds did not "play doctor" by formulating his own opinion as to the Plaintiff's RFC. The ALJ is ultimately responsible for assessing a plaintiff's RFC and "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p; 20 C.F.R. § 416.946(c). Here,

6

the ALJ identified and discussed the medical opinions and evidence he credited in arriving at Plaintiff's RFC. (A.R. 29-34). An ALJ must base his assessment on "all of the relevant evidence in the case record." SSR 96-8p; *see* SSR 96-6p. ALJ Reynolds's decision here satisfies these requirements, providing sufficient discussion of the evidence he considered, the weight each was given, and how those findings support his conclusions. Thus, his RFC determination is supported by substantial evidence.

Plaintiff takes issue with the ALJ's unwillingness to give controlling weight to the medical opinions of his treating family physician, Dr. James Noble, and his treating psychiatrist, Dr. Robert Bunge. "Generally, the opinions of treating physicians are given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (*citing* 20 C.F.R. § 404.1527(d)(2)). However, treating physicians' opinions do not automatically bind the ALJ: these opinions are only entitled to controlling weight when they are supported by objective medical evidence and consistent with other substantial evidence in the record, *Wilson*, 378 F.3d at 544, and not contradicted by substantial evidence to the contrary. *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1308-09 (6th Cir. 1990). If the ALJ finds the treating physician's opinion fails to meet these conditions, she may discredit that opinion, so long as she gives good reasons for doing so. 20 C.F.R. § 416.927(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (*quoting* Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).

However, the Sixth Circuit has explained that "a treating physician's opinion is only entitled to such . . . deference when it is a medical opinion." *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 471 (6th Cir. 2014) (*quoting Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th Cir. 2010)). "If the treating physician instead submits an opinion on an issue reserved to the Commissioner–such as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of vocational factors–[the ALJ's] decision need only 'explain the consideration given to the treating source's opinion.'" *Id.* (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013) (*quoting* SSR 96-5p)). The ALJ is not required to give such an opinion any particular weight. *Id.* (*citing Turner*, 381 F. App'x at 493).

Here, Plaintiff contends the ALJ violated the treating physician rule when he failed to provide good reasons for his decision to ignore the opinion of Dr. Noble. In support, Plaintiff cites to a February 4, 2011, progress note of Dr. Noble, wherein Dr. Noble remarks in the assessment and plan portion of the visit that Plaintiff "qualifies for social security under the criteria of documented DDD of cervical spine with appropriate radicular finding and decrease sensation over the ring finger, middle and little finger L[eft] hand." (A.R. 272). This, however, is not a medical opinion by Dr. Noble, but an opinion on the ultimate issue of whether Plaintiff is disabled under Social Security standards. Thus, the ALJ was not required to give such an opinion any particular weight. *Curler,* 561 F. App'x at 471. And in his decision, the ALJ made note of this opinion (A.R. 30), but also noted that he was not adopting this conclusion of presumptive disability by Dr. Noble, first because Plaintiff does not, in fact, meeting a listing (A.R. 30-31), which Plaintiff does not specifically challenge, and second because subsequent medical information revealed that the physical problems

8

Plaintiff was having from a cervical herniated disc had subsided and subsequent record information revealed that Plaintiff had been working (A.R. 34).

Moreover, Dr. Noble does provide a Medical Source Statement of Ability to do Work-Related Activities (Physical) (A.R. 365-68) that was adopted by the ALJ as being consistent with his RFC determination for Plaintiff as to his physical abilities and limitations. (A.R. 34). This Statement was completed by Dr. Noble in November 2011, after Dr. Noble's earlier presumptive disability notation, and, as the ALJ noted, the Statement reflects that Mr. Stamper retains the ability to engage in a range of light work. (A.R. 30). Therefore, and contrary to Plaintiff's argument, the ALJ did not disregard the treating physician rule, but rather properly reviewed and considered the medical opinions offered by Dr. Noble. These medical opinions by Dr. Noble, along with those of consulting examiner Dr. Jennifer Cook (A.R. 353-56)[3] and Dr. Humildad Anzures (A.R. 89-92), were reviewed and considered by the ALJ in determining Plaintiff's physical RFC. (A.R. 30, 33-34). They, in combination with the ALJ's consideration of Plaintiff's testimony about his symptoms and the course and effectiveness of his treatment, serve as substantial evidence in support of the ALJ's determination. *See Richardson v. Perales,* 402 U.S. 389, 390, 401 (1971) (issue is whether there was substantial evidence to support the ALJ's decision, even where substantial evidence may exist to support a contrary conclusion). There was no error by the ALJ in this regard.

---

[3]To the extent Plaintiff takes issue with the ALJ's consideration of Dr. Cook's opinions and suggests that Dr. Cook found a disabling level of limitation in lifting (R. 14-1, at 7), Dr. Cook did not so opine. Dr. Cook indicated her report that Mr. Stamper "would have difficulty being able to lift/carry objects without limitations" (A.R. 355). And Dr. Anzures opined more specifically that Mr. Stamper could only lift/carry 20 pounds occasionally and 10 pounds frequently (A.R. 90), while Dr. Noble opined that Mr. Stamper could lift/carry 10 pounds occasionally and 20 pounds frequently (A.R. 365).

Plaintiff also takes issue with the ALJ's consideration of the medical opinion evidence provided by Dr. Bunge, Plaintiff's treating psychiatrist, and the ALJ's formulation of Plaintiff's mental RFC. The ALJ did find Mr. Stamper to have severe impairments of depression and anxiety, not otherwise specified (A.R. 29), and his RFC included mental restrictions that Plaintiff should work in an object oriented environment with only occasional and casual contact with coworkers, supervisors or the general public (A.R. 33). Plaintiff argues the ALJ should have given controlling weight to all of the limitations offered by Dr. Bunge, as they were the only mental restrictions offered and are therefore unchallenged (R. 14-1, at 3, 4-5, 8, 10).

The record reflects that disability based upon mental impairment was supplemented by Plaintiff after his initial application. (A.R. 237). The claim record further reflects office records of Dr. Robert Bunge, whom Plaintiff saw on July 7 and November 11, 2011 (A.R. 373-77, 364). The record also contains a Medial Source Statement of Ability to do Work-Related Activities (Mental) signed by Dr. Bunge on October 7, 2011 (A.R. 362-63). The ALJ noted this evidence in his decision (A.R. 30-31, 33-34). On the Medical Source Statement, Dr. Bunge opined that Plaintiff has a fair ability to: remember locations and work-like procedures; understand and remember short, simple instructions; carry out short, simple instruction; sustain an ordinary routine without special supervision; work with or near others without being distracted by them; and make simple work-related decisions. He further opined that Plaintiff has a poor ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; complete a normal workday or workweek; and perform at a consistent pace. When asked what medical/clinical findings support this assessment, Dr. Bunge remarked that Plaintiff "has problems

concentrating and his physical symptoms interfere with him putting in a full day of work. He is withdrawn from others and has problems handling stress." (A.R. 362). When asked about Plaintiff's ability to respond to supervision, coworkers, and work pressures, Dr. Bunge indicated that Plaintiff has a good ability to: interact appropriately with the public; ask simple questions or request assistance; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness. He further indicated that Plaintiff has a fair ability to: accept instructions and respond appropriately to criticism from supervisors; get along with coworkers and peers; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. When asked what supports this particular assessment, Dr. Bunge remarked that Plaintiff "is withdrawn from others and has problems handling stress. He has impaired concentration." (A.R. 363).

The ALJ ultimately imposed only the mental RFC restrictions earlier noted above, but did so only after considering the medical evidence and opinions offered by Dr. Bunge. Contrary to Plaintiff's contention, the ALJ was not obligated to adopt Dr. Bunge's opinions merely because they were the only medical opinions on mental restrictions offered in the record.

The Sixth Circuit recently explained, "[a] physician qualifies as a treating source if there is an 'ongoing treatment relationship' such that the claimant sees the physician 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Reeves v. Comm'r of Soc. Sec.*, __ F. App'x __, 2015 WL 4231600, at *5 (6th Cir. July 13, 2015) (*quoting* 20 C.F.R. § 404.1502; *citing Smith*, 482 F.3d at 876); *see also Mireles v. Comm'r of Soc. Sec.*, __ F. App'x __, 2015 WL 4503502, at *2 (6th Cir. July 24, 2015)

(no error in finding doctor not treating source when saw claimant no more than three times); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) (opinion rendered after single visit does not suffice to establish a treating physician relationship even if subsequently became a treating source because question is whether there was an ongoing relationship at the time the opinion was rendered).

Here, the evidence is that Plaintiff saw Dr. Bunge on two occasions, with Dr. Bunge rendering his Medical Statement after Plaintiff's first appointment and before his second. The ALJ noted this lack of treatment history in addressing and discounting Dr. Bunge's opinions. (A.R. 33-34). He further noted that Dr. Bunge found Plaintiff to have a GAF score of 60 after the first visit. (A.R. 34). The record also reveals that he continued with a GAF score of 60 after the second appointment (*see* A.R. 364). Even were the opinions of Dr. Bunge to be viewed as having been rendered by a treating source, they still had to be supported by the medical evidence for the ALJ to accept them. In this case, as explained by the ALJ in his decision, they were not.

Plaintiff argues that Dr. Bunge diagnosed him with bipolar disorder and panic disorder. (A.R. 375). But it is the properly supported evidence of functional limitations, not diagnosis, that is used by the ALJ to formulate the RFC. *See* 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.920. The limitations opined by Dr. Bunge after one visit with the Plaintiff were simply not supported by objective clinical evidence or the record overall. The ALJ discussed this evidence in reviewing the severity of Plaintiff's mental impairments and whether Plaintiff satisfied a listing.

> In activities of daily living, the claimant has mild restriction. He may still be working. He testified (under oath) he sits with his parents all day, watches television, uses his traction device at night. He can feed, bathe and dress himself and monitor all medications without assistance.

> In social functioning, the claimant has moderate difficulties. He is married with children.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties referable to musculoskeletal pain.
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. Claimant has no history of being a psychiatric patient, either inpatient or outpatient.

(A.R. 32). In noting above that he may still be working, the ALJ noted that Dr. Bunge, in his office note of July 7, 2011, for Plaintiff's initial visit, remarked that Mr. Stamper "has found it increasingly difficult to work over the past six months" and that he reported to Dr. Bunge that he "has not worked in the past six months. His wife is a pharmacy technician." (A.R. 30). In considering Dr. Bunge's opinions as to Plaintiff's limitations, the ALJ also noted that Mr. Stamper indicated the psychotropic medications prescribed to him by Dr. Bunge have really helped. (A.R. 34, 51-53, 60-61). Upon initial exam by Dr. Bunge, although Plaintiff was noted to be depressed, it was also found to have normal speech, intact cognitive functioning, and fairly good judgment and insight. (A.R. 375). When he saw and examined Plaintiff for a second visit, Plaintiff reported family stresses, but that his spouse thought he was doing much better. (A.R. 377).

The Sixth Circuit has stated that "an ALJ 'may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by medical evidence.'" *Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 194 (6th Cir. 2009) (*citing Meece v. Barnhart,* 192 F. App'x 456, 465 (6th Cir. 2006)). As explained above, whether Dr. Bunge's medical opinions qualify as a treating source opinion is questionable. In addition, the ALJ's decision not to credit all of the opinions of Dr. Bunge was precisely because he found they were not supported by the objective medical and other evidence. Moreover, the determination of ALJ Reynolds is based

13

on other medical evidence and opinions and other evidence, and not merely the ALJ's "own medical judgment." Indeed, "'[t]he ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw his own inferences.'" *Simpson,* 344 F. App'x at 194 (*quoting McCain v. Dir., OWCP,* 58 F. App'x 184, 193 (6th Cir. 2003)). In determining the credibility of the medical opinions and findings in the record, ALJ Reynolds considered the degree to which they were supported by and consistent with the objective medical evidence and the record as a whole and granted weight accordingly. Though Plaintiff may believe there is contradictory evidence in the record, ultimately the question is whether the ALJ's determination is supported by substantial evidence, and it was. There is no error in this regard.

In sum, the ALJ properly performed his duty as trier of fact in resolving the conflicts in the evidence. *See Richardson,* 402 U.S. at 399. He did not impermissibly substitute his own opinion for that of Dr. Noble or Dr. Bunge because the ALJ was speaking about residual functional capacity, an area where the ALJ makes the legal decision. *See Roy v. Apfel,* 23 F. App'x 389, 390 (6th Cir. 2001).

## IV. CONCLUSION AND RECOMMENDATION

As explained above, the ALJ's consideration of the evidence relating to Plaintiff's disability confirms the ALJ's decision was supported by substantial evidence in the record.

Accordingly, **IT IS RECOMMENDED** that:

1. the ALJ's decision be found to be supported by substantial evidence and therefore **affirmed;**

2. Plaintiff Stamper's Motion for Summary Judgment (R. 14) be **denied;**

3. Defendant Commissioner's Motion for Summary Judgment (R. 16) be **granted;** and

4.  Judgment be entered and this matter **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985). A party may file a response to another party's objections within fourteen (14) days after being served with a copy. *See* Fed. R. Civ. P. 72(b).

Dated this 14th day of September, 2015.



Signed By:
*Candace J. Smith*
**United States Magistrate Judge**

G:\DATA\social security\14-146 Stamper R&R.cjs.wpd